Main Document Page 1 of 49

Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address
**Carey C. Pickford, SBN 149162**
**Pickford Law Office**
**38975 Sky Canyon Drive, Suite 112**
**Murrieta, CA 92563**
**951-677-5156 Fax: 951-677-5748**
**admin@pickfordlaw.com**

☒ *Attorney for Debtor(s)*
☐ *Debtor(s) appearing without an attorney*

FOR COURT USE ONLY

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

In re:

**Chad A. Bolton**

Debtor(s).

CASE NO.: **6:11-bk-41712-DS**

CHAPTER: **13**

**DEBTOR'S NOTICE OF MOTION AND MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE[11 U.S.C. § 506(d)]**

DATE: **November 29, 2011**
TIME: **1:30 PM**
COURTROOM: **304**
FLOOR: **3rd**

1. TO: **JPMorgan Chase Bank, N.A., Rod Danielson, Trustee, and all other parties in interest**

2. NOTICE IS HEREBY GIVEN that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief set forth in the Motion and accompanying supporting documents served and filed herewith.

3. Hearing Location:
☐ 255 East Temple Street, Los Angeles
☐ 411 West Fourth Street, Santa Ana
☐ 21041 Burbank Boulevard, Woodland Hills
☐ 1415 State Street, Santa Barbara
☒ 3420 Twelfth Street, Riverside

4. **Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one. *(If you do not have an attorney, you may wish to consult one.)*

5. **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than 14 days prior to the above hearing date. If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

6. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according the judge's self-calendaring procedures.

Date: **October 21, 2011**

**Pickford Law Office**
Printed name of law firm *(if applicable)*

**Carey C. Pickford 149162**
Printed Name of Individual Debtor or Attorney for Debtor

**/s/Carey Pickford**
Signature of Individual Debtor or Attorney for Debtor

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.
*June 2011* Page 1 **F 4003-2.4.MOTION**

**MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE [11 U.S.C. § 506(d)]**

**(DEBTOR: Chad A. Bolton )**

**NAME OF CREDITOR HOLDING JUNIOR LIEN ("Respondent"): JPMorgan Chase Bank, N.A.**

**1. Property at Issue**: Debtor moves to avoid the junior deed of trust, mortgage or other encumbrance (Lien) encumbering the following real property (Property), which is the principal residence of debtor.

Street Address: **22801 Lassen Drive**
City, State, Zip Code: **Canyon Lake, CA 92587**

Legal description of Property for document recording number *(including county of recording)*: **Lot 87 of Tract 3720 in the City of Canyon Lake, County of Riverside, State of California, as per Map recorded in Book 58, pages 76 to 86 inclusive of Maps, in the office of the Riverside County Recorder's Office, APN # 353-191-005-5.**

☐ See attached page for legal description of Property or document recording number.

**2. Case History:**

**a.** A voluntary petition under Chapter ☐ 7 ☐ 11 ☐ 12 ☒ 13 was filed on *(specify petition date)*: **October 11, 2011.**

**b.** ☐ An Order of Conversion to chapter 13 was entered on *(specify date)*: ______

**3. Grounds for Avoidance of Junior Lien:**

**a.** As of *(date of title review)* **October 11, 2011** , the Property is subject to the following liens in the amounts specified securing the debt against the Property, that the debtor seeks to have treated as indicated:

(1) *(Name of holder of 1st lien)* **Bank of America, N.A.** in the amount of $ **365,851.87** .

(2) *(Name of holder of 2nd lien)* **JPMorgan Chase Bank, N.A. fdba, fka Washington Mutual Bank, N.A.** in the amount of $ **255,738.00** ☒ is ☐ is not to be avoided;

(3) *(Name of holder of 3rd lien)* ______ in the amount of $ ______ ☐ is ☐ is not to be avoided;

☐ See attached page for additional lien(s).

As of *(date of valuation/appraisal)* **October 11, 2011**, Property is worth no more than *(value per valuation/appraisal)* $ **285,000.00** .

**b.** As a result, Respondent's Lien encumbering the Property is wholly unsecured.

**c. Evidence in Support of Motion:**

(1) ☒ The amount of the lien identified in paragraph 3(a)(1) is based on *(type of evidence)* **Notice of Trustee's Sale filed by, or on behalf of, Bank of America, N.A.** , attached hereto and identified as Exhibit **1** .

(2) ☒ The amount of the lien identified in paragraph 3(a)(2) is based on *(type of evidence)* **Statement from Tate & Kirlin, a collection agency for JPMorgan Chase Bank, N.A.** , attached hereto and identified as Exhibit **2** .

(3) ☐ The amount of the lien identified in paragraph 3(a)(3) is based on *(type of evidence)* ______, attached hereto and identified as Exhibit ___.

(4) ☒ The relative priority of the liens encumbering the Property is established by evidence attached as **Debtor's Declaration and Deeds of Trust** Exhibit **4** .

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2011* Page 2 **F 4003-2.4.MOTION**

Main Document Page 3 of 49

(5) ☒ The value of the Property from paragraph 3(b) is based on *(type of evidence)* **Debtor's Declaration and Declaration of C.E. Elliott, appraiser and his report**, attached as Exhibit **3**.

(6) ☒ Debtor submits the attached Declaration(s): **Debtor's Declaration and Declaration of C.E. Elliott.**

(7) ☐ Other evidence *(specify/identify supplemental evidence)*: ______ attached as Exhibit ___.

**d. WHEREFORE, Debtor prays that this Court issue an Order granting the this Motion and establishing that:**

(1) The Property is valued at no more than*(requested value)* $ **285,000.00** .

(2) No payments are to be made on the secured claim of the Respondent, and regular mortgage maintenance payments are not to be made, before the Debtor's ☐ completion of the chapter 13 plan, or ☒ receipt of a chapter 13 discharge.

(3) Respondent's(s') claim on the junior position lien(s) shall be allowed as a nonpriority general unsecured claim(s) in the amount per the filed Proof of Claim.

(4) The avoidance of the Respondent's(s') junior lien(s) is contingent upon: The Debtor's ☐ completion of the chapter 13 plan, or ☒ receipt of a chapter 13 discharge.

(5) The Respondents shall retain its/their lien(s) in the junior position for the full amount due under the corresponding note and lien in the event of either the dismissal of the Debtor's chapter 13 case, the conversion of the Debtor's chapter 13 case to any other chapter under the United States Bankruptcy Code, or if the Property is sold or refinanced prior to the Debtor's ☐ completion of the chapter 13 plan, or ☒ receipt of a chapter 13 discharge.

(6) In the event that the holder of the first position lien or any senior lien on the Property forecloses on its interest and extinguishes the Respondent's(s') lien rights prior to the Debtor's completion of the chapter 13 plan and receipt of a chapter 13 discharge, the Respondent's(s') lien(s) shall attach to the proceeds greater than necessary to pay the senior lien, if any, from the foreclosure sale, subject to the priority of any such junior lien(s).

**e.** ☐ See attached continuation page for additional provisions.

Date: **October 21, 2011**

Respectfully submitted,

By: ***/s/*Carey Pickford**
Signature of Debtor or Attorney for Debtor

Name: **Carey C. Pickford**
Printed Name of Debtor or Attorney for Debtor

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2011* Page 3 **F 4003-2.4.MOTION**

**DECLARATION OF CHAD A. BOLTON**

Chad A. Bolton declares as follows:

1. I am the debtor in this matter.

2. The first trust deed on my home is with Bank of America, NA, which is also known as BAC Home Loans Servicing, LP. The current balance owing on this first mortgage is $365,851.87. I have not received a statement from Bank of America on this first mortgage for more than a year, so I do not have a current statement from them. However, Bank of America did start foreclosure proceedings and their "Notice of Trustee's Sale" indicates that as of September 20, 2011, the balance owing is $365,851.87. (Exhibit 1 – Notice of Trustee's Sale).

3. The second trust deed on my home is currently with JPMorgan Chase. This second mortgage was originally with Washington Mutual Bank, N.A. but was later transferred to JPMorgan Chase, JPMorgan Chase has now assigned this loan to Tate & Kirlin, a collection agency, the balance on that second mortgage is $255,738. (Exhibit 2 – Billing Statement from Tate & Kirlin). My second mortgage is secured by a deed of trust that was recorded on November 5, 2004, as instrument 2004-0882182 in the Riverside County Recorder's Office. (Exhibit 4 - Recorded Deed of Trust).

4. I believe that my home is worth $285,000.00.

5. My home is located at 22801 Lassen Drive, Canyon Lake, CA 92587. The legal description of our home is: Lot 87 of Tract 3720 in the City of Canyon Lake, County of Riverside, State of California as per Map recorded in Book 58, pages 76 to 86 inclusive of Maps, in the office of the Riverside County Recorder's Office, APN #353-191-005-5. (Exhibit 5 – Grant Deed).

I declare under the penalty of perjury that the foregoing is true and correct. Executed at Murrieta, California.

Dated: 10-21-11

Chad A. Bolton, Debtor

**RE: BOLTON**

**DECLARATION OF C.E. ELLIOTT**

I am over the age of eighteen years, and am a resident of the State of California. I have personal knowledge of the facts set forth herein and if called to testify as a witness in this matter would competently testify under oath as follows:

1. I am a licensed real estate appraiser. I have been a real estate appraiser since 2004 and have been licensed by the State of California since 2004.

2. On 10/09/2011 I appraised the property at 22801 Lassen Drive, Canyon Lake, CA 92587 (hereinafter "the subject property").

3. I am familiar with the Uniform Standards of Professional Appraisal Practice as promulgated by the Appraisal Standards Board of the Appraisal Foundation and I have appraised the subject property in accordance with those standards.

4. I personally inspected the interior and exterior of the subject property and based upon inspection, market research, my experience, training and all other factors that comprise a real estate appraisal, I concluded that the subject property has a fair market value of approximately $285,000 as of 10/09/2011. The appraisal attached to this motion is a true and correct copy of the appraisal I submitted for the subject property.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this 9th day of October 2011, at Murrieta, California.

C. E. Elliott
AL 032022

Main Document Page 6 of 49

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**38975 Sky Canyon Drive**
**Suite 112**
**Murrieta, CA 92563**

A true and correct copy of the foregoing document described as **Debtor's Notice of Motion and Motion to Avoid Junior Lien on Principal Residence** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 21, 2011**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

**Rod (DS) Danielson (TR) notice-efile@rodan13.com**
**Mishaela J Graves bknotice@mccarthyholthus.com**
**Carey C Pickford admin@pickfordlaw.com**
**United States Trustee (RS) ustpregion16.rs.ecf@usdoj.gov**

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On **October 21, 2011**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Rod Danielson, Trustee**
**4361 Latham Street, Ste. 270**
**Riverside, CA 92501**

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date **October 21, 2011** Signature: **/s/Hazel Young**

Printed Name: **Hazel Young**

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.
*June 2011* Page 4 **F 4003-2.4.MOTION**

Main Document Page 7 of 49

**II. SERVED BY UNITED STATES MAIL, CERTIFIED MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
*(Attached page to Proof of Service of Document-please include any additional or alternative addresses and attach additional pages if needed)*
*(Certified Mail required for service on a national bank.)*

| 1st lienholder *(name and address)* | Address from: | Delivery Method |
|---|---|---|
| **Bank of America, N.A.**<br>**c/o Mishaela J. Graves, Esq.**<br>**McCarthy & Holthus, LLP**<br>**1770 Fourth Avenue**<br>**San Diego, CA 92101** | ☐ Proof of Claim ☒ Secretary of State<br>☐ FDIC website ☒ Other: *Request for Notice* | ☒ US Mail<br>☐ Certified Mail - Tracking#_____<br>☐ Overnight Mail - Tracking#_____<br>Carrier Name: |
| 1st lienholder *(name)* and Agent for Service of Process *(name and address)*<br>**Recontrust Company**<br>**1800 Tapo Canyon Rd.**<br>**Simi Valley, CA 93063** | Address from:<br>☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☒ Other: **Notice of Sale** | Delivery Method<br>☒ US Mail<br>☐ Certified Mail - Tracking#_____<br>☐ Overnight Mail - Tracking#_____<br>Carrier Name: |
| 1st lienholder *(name)* and Servicing Agent *(name and address)*<br>**Officer of the Bank**<br>**Bank of America, N.A.**<br>**101 S. Tryon Street**<br>**Charlotte, NC 28202** | Address from:<br>☐ Proof of Claim ☐ Secretary of State<br>☒ FDIC website ☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☒ Certified Mail - Tracking# **7010 3090 0000 6655 9719**<br>☐ Overnight Mail - Tracking#_____<br>Carrier Name: |

| 2nd lienholder *(name and address)* | Address from: | Delivery Method |
|---|---|---|
| **Officer of the Bank**<br>**JPMorgan Chase Bank, NA.**<br>**1111 Polaris Parkway**<br>**Columbus, OH 43240** | ☐ Proof of Claim ☐ Secretary of State<br>☒ FDIC website ☐ Other: *specify* | ☐ US Mail<br>☒ Certified Mail - Tracking# **7010 3090 0000 6655 9726**<br>☐ Overnight Mail - Tracking#_____<br>Carrier Name: |
| 2nd lienholder *(name)* and Agent for Service of Process *(name and address)*<br>**JPM Chase**<br>**c/o Tate & Kirlin Asosciates**<br>**2810 Southampton Road**<br>**Philadelphia, PA 19154** | Address from:<br>☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☒ Other: Billing Statement/Colleciton Letter | Delivery Method<br>☒ US Mail<br>☐ Certified Mail - Tracking#_____<br>☐ Overnight Mail - Tracking#_____<br>Carrier Name: |
| 2nd lienholder *(name)*<br>*(name and address)*<br>**JPMorgan Chase Bank**<br>**4 New York PLaza 19**<br>**New York, NY 10004** | Address from:<br>☐ Proof of Claim ☒ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | Delivery Method<br>☒ US Mail<br>☐ Certified Mail - Tracking#_____<br>☐ Overnight Mail - Tracking#_____<br>Carrier Name: |
| 2nd lienholder *(name)* and Servicing Agent *(name and address)*<br>**JPMorgan Chase Bank**<br>**c/o CT Corporation System**<br>**818 W Seventh St.**<br>**Los Angeles, CA 90017** | Address from:<br>☐ Proof of Claim ☒ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | Delivery Method<br>☒ US Mail<br>☐ Certified Mail - Tracking#_____<br>☐ Overnight Mail - Tracking#_____<br>Carrier Name: |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2011* Page 5 **F 4003-2.4.MOTION**

**Back to Search Bank Find**

Your Bank at a Glance as of 10/20/2011 .

**JPMorgan Chase Bank, National Association** (FDIC Cert: 628) **is FDIC Insured.**

**JPMorgan Chase Bank, National Association** has been FDIC insured since **January 1, 1934.**
It was established on **January 1, 1824.**
Its main office (headquarters) is located at:

**1111 Polaris Parkway**
**Columbus, Ohio 43240**
**County of Delaware**

**JPMorgan Chase Bank, National Association** has **5684** Domestic Branches (Offices) located in **26** state(s) and **197** Foreign Offices. (Check to locate Branches (Offices) by state.)

JPMorgan Chase Bank, National Association's reported (or primary) website: http://www.jpmorganchase.com:80/

**JPMorgan Chase Bank, National Association** is chartered as a National Bank. Therefore the primary federal regulator is the **Office of the Comptroller of the Currency (OCC)**. For **consumer assistance** regarding an issue with this institution, please contact the **OCC** directly using http://www.helpwithmybank.gov/.

Calculate your FDIC insurance coverage at JPMorgan Chase Bank, National Association using FDIC EDIE at www.fdic.gov/edie.
Last financial information available about JPMorgan Chase Bank, National Association.
Historical profile of Jpmorgan Chase Bank, National Association.

For additional information please click on one of the following:

1. For more information on Federal Deposit Insurance, Your Insured Deposits or Insured or Not Insured
2. View the industry's overall picture - Statistics at a Glance (This will open a new window.)
3. Current Financial data about your bank - Institution Directory – Two years Financial Report (This will open a new window.)
4. Examine your bank's financial data - CALL/TFR Financial Information *6/30/2011 Latest Available*
5. Study branching and deposit market share - Summary of Deposits/Market Share
6. Analyze and compare individual institutions and create custom reports - Institution Directory – Compare
7. Review industry using 8 predefined reports - Statistics on Depository Institutions
8. Identify the latest performance trends in your state - Quarterly Banking Profile State Tables (This will open a new window.)
9. Analyze institutions and custom peer groups - Statistics on Depository Institutions
10. View branch office deposit information - Summary of Deposits
11. Community Reinvestment Act (CRA) Performance Ratings - CRA Performance Ratings
12. FDIC's Disclaimer - FDIC's Disclaimer

Questions, Suggestions & Requests

Home | Contact Us | Search | Help | SiteMap | Forms
Website Policies | Privacy Policy | USA.gov | FDIC Office of Inspector General
Freedom of Information Act (FOIA) Service Center | FDIC Open Government Webpage | No FEAR Act Data

# Business Entity Detail

Data is updated weekly and is current as of Friday, October 14, 2011. It is not a complete or certified record of the entity.

| | |
|---|---|
| **Entity Name:** | JPMORGAN CHASE BANK |
| **Entity Number:** | C0248426 |
| **Date Filed:** | 09/25/1950 |
| **Status:** | ACTIVE |
| **Jurisdiction:** | NEW YORK |
| **Entity Address:** | 4 NEW YORK PLAZA 19 |
| **Entity City, State, Zip:** | NEW YORK NY 10004 |
| **Agent for Service of Process:** | C T CORPORATION SYSTEM |
| **Agent Address:** | 818 W SEVENTH ST |
| **Agent City, State, Zip:** | LOS ANGELES CA 90017 |

* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code section 2114 for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to Name Availability.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to Information Requests.
- For help with searching an entity name, refer to Search Tips.
- For descriptions of the various fields and status types, refer to Field Descriptions and Status Definitions.

Privacy Statement | Free Document Readers

Copyright © 2011 California Secretary of State

# EXHIBIT 1 – 1ST MORTGAGE STATEMENT

LANDSAFE TITLE

RECORDING REQUESTED BY:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
TS No. 11-0049139
Title Order No. 11-0039623

DOC # 2011-0416431
09/20/2011 12:10P Fee:21.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | 2 | | 1 | | | | |
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | T: | | CTY | UNI | 042 |

APN No. 353-191-005-5

T 042

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 07/03/2003. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

Notice is hereby given that RECONTRUST COMPANY, N.A., as duly appointed trustee pursuant to the Deed of Trust executed by CHAD A. BOLTON, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY, dated 07/03/2003 and recorded 07/14/2003, as Instrument No. 2003-521468, in Book , Page of Official Records in the office of the County Recorder of RIVERSIDE County, State of California, will sell on 10/12/2011 at 09:00 AM, Riverside Convention Center 3443 Orange Street, Riverside, CA 92501
at public auction, to the highest bidder for cash or check as described below, payable in full at time of sale, all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as more fully described in the above referenced Deed of Trust. The street address and other common designation, if any, of the real property described above is purported to be: 22801 LASSEN DRIVE, CANYON LAKE, CA 92587. The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $365,851.87. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.
In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state.
Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided, and the unpaid principal of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.
If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Trustee's Sale duly recorded with the appropriate County Recorder's office.
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
Phone/Sale Information: (800) 281-8219

SEP 16 2011

By: ______________________
Rosselin Rincon, Authorized Signer

RECONTRUST COMPANY, N.A. is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.

# EXHIBIT 2 – 2ND MORTGAGE BILLING STATEMENT

2810 Southampton Road
Philadelphia PA 19154
ADDRESS SERVICE REQUESTED

TATE & KIRLIN ASSOCIATES
*2810 Southampton Road • Philadelphia, PA 19154*
*Toll Free (877) 982-0001 • (267) 407-0101*

Creditor: JPM CHASE
Client Ref: [redacted]3634
Account #: [redacted]011
Balance: $255738.37

June 21, 2010

#BWNKGZZ
#TYDEED5D75# 13840011-013
Chad A Bolton
22801 Lassen Dr
Sun City CA 92587-7939

Tate & Kirlin Associates
2810 Southampton Rd
Philadelphia PA 19154-1207

*** Detach Upper Portion and Return with Payment *** 1171-TATE1013TYDEED5D75

Client: JPM CHASE
Client Ref #: XXXXXXXXX
Account #: XXXXXXXXX

This letter is being sent to remind you that your payment of $505.00 is due to be debited against your account on 06-28-10.

Should you have any questions or if you would like to discuss your payment, please call 800-355-0333.

Very Truly Yours,

SHAWN MADDEN

This is an attempt to collect a debt and any information obtained will be used for that purpose. Tate & Kirlin Associates is a professional debt collection company.

**Change of Address:**__________ **City:**______ **State:**___ **Zip:**______
**Home Telephone #:**__________ **Business Telephone #:**__________

**IF YOU WISH TO PAY BY VISA OR MASTERCARD (CIRCLE ONE) FILL IN THE INFORMATION BELOW AND RETURN THE ENTIRE LETTER TO US**

Account Number | $ Payment Amount | __/__ Expire Date

Card Holder Name | Signature of Card Holder

**Tate and Kirlin Associates • 2810 Southampton Road • Philadelphia, PA 19154 • Toll free (877) 982-0001 • (267) 407-0101**

# EXHIBIT 3 – APPRAISAL

# APPRAISAL OF

## LOCATED AT:

22801 LASSEN DR
CANYON LAKE, CA 92587-7939

## CLIENT:

BOLTON
22801 LASSEN DRIVE
CANYON LAKE, CA 92587-7939

## AS OF:

OCTOBER 9, 2011

## BY:

C. E. ELLIOTT
AL 032022

BOLTON
22801 LASSEN DRIVE
CANYON LAKE, CA 92587-7939

File Number: CE100911

In accordance with your request, I have appraised the real property at:

22801 LASSEN DR
CANYON LAKE, CA 92587-7939

The purpose of this appraisal is to develop an opinion of the defined value of the subject property, as improved. The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the defined value of the property as of OCTOBER 9, 2011 is:

$285,000
Two Hundred Eighty-Five Thousand Dollars

The attached report contains the description, analysis and supportive data for the conclusions, final opinion of value, descriptive photographs, assignment conditions and appropriate certifications.

C. E. ELLIOTT
AL 032022

INTENDED OR AUTHORIZED BY THE APPRAISER. THE SCOPE OF THIS ASSIGNMENT IS SPECIFIC TO THE IDENTIFIED INTENDED USE.

**SUBJECT**

Property Address 22801 LASSEN DR City CANYON LAKE State CA Zip 92587-7939
Owner of Public Record BOLTON CHAD A County RIVERSIDE
Legal Description LOT 87 MB 058/076 TR 3720
Assessor's Parcel # 353-191-005 Tax Year 2010 R.E. Taxes $ $5,757
Neighborhood Name CANYON LAKE Map Reference 867D1 Census Tract 427
Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)

**SALES HISTORY**

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Prior Sale/Transfer: Date 05/27/2010 Price $340,123 Source(s) PUBLIC RECORDS
Analysis of prior sale or transfer history of the subject property (and comparable sales, if applicable) RESEARCH OF THIS PROPERTY REVEALED NOTHING OTHER THAN WHAT APPEARS TO BE AN ARM'S LENGTH TRANSACTION AT A SALES PRICE CONSISTENT WITH COMPETING PROPERTIES AT THE TIME. THE LOCAL MLS AND PUBLIC RECORDS WERE USED AS THE SOURCES FOR THE ABOVE PRIOR SALES DATA. GIVEN THE INTENDED USE AND SCOPE OF THE ASSIGNMENT, COMPARABLE SALES HISTORIES WERE NOT RESEARCHED.

Offerings, options and contracts as of the effective date of the appraisal NO OFFERINGS, OPTIONS OR CONTRACTS ARE IN EFFECT. THE CLIENT IS ONLY SEEKING AN OPINION OF VALUE FOR THE SUBJECT PROPERTY.

**NEIGHBORHOOD**

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|
| Location [ ] Urban [X] Suburban [ ] Rural | Property Values [ ] Increasing [X] Stable [ ] Declining | PRICE | AGE | One-Unit | 85 % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | $(000) | (yrs) | 2-4 Unit | % |
| Growth [ ] Rapid [X] Stable [ ] Slow | Marketing Time [X] Under 3 mths [ ] 3-6 mths [ ] Over 6 mths | 215 Low | 10 | Multi-Family | 5 % |
| Neighborhood Boundaries TO THE NORTH BY GREENWALD AVE, TO THE EAST BY GOETZ ROAD, TO THE SOUTH BY CANYON LAKE DR, AND TO THE WEST BY CANYON LAKE. | | 345 High | 50 | Commercial | 5 % |
| | | 285 Pred. | 30 | Other VACANT | 5 % |

Neighborhood Description SEE ATTACHED ADDENDUM

Market Conditions (including support for the above conclusions) SEE ATTACHED ADDENDUM

**SITE**

Dimensions SEE PLAT MAP Area 0.22 AC Shape IRREGULAR View LAKE
Specific Zoning Classification R1 Zoning Description SINGLE FAMILY RESIDENCE
Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)
Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No If No, describe. GIVEN THE PRESENT ZONING AND EFFECTIVE DEMAND, HIGHEST AND BEST USE IS LIMITED TO SINGLE UNIT AND THE PRESENT USE IS THE MOST PRACTICAL USE.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | [ ] | Water | [X] | [ ] | Street ASPHALT | [X] | [ ] |
| Gas | [ ] | [X] PROPANE | Sanitary Sewer | [X] | [ ] | Alley | [ ] | [ ] |

Site Comments SEE ATTACHED ADDENDUM.

**IMPROVEMENTS**

| GENERAL DESCRIPTION | | FOUNDATION | | EXTERIOR DESCRIPTION | materials | INTERIOR | materials |
|---|---|---|---|---|---|---|---|
| Units [X] One [ ] One w/Acc. unit [ ] | | [X] Concrete Slab [ ] Crawl Space | | Foundation Walls | CONCRETE | Floors | TILE-WD / AVG |
| # of Stories 1 | | [ ] Full Basement [ ] Partial Basement | | Exterior Walls | STUCCO | Walls | DRYWALL |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | | Basement Area | 0 sq. ft. | Roof Surface | TILE | Trim/Finish | WOOD |
| [X] Existing [ ] Proposed [ ] Under Const. | | Basement Finish | 0 % | Gutters & Downspouts | NONE | Bath Floor | TILE / AVG |
| Design (Style) CONTEMPORARY | | [ ] Outside Entry/Exit [ ] Sump Pump | | Window Type | DUAL PANE | Bath Wainscot | TILE / AVG |
| Year Built 1978 | | | | Storm Sash/Insulated | SLIDING | Car Storage [ ] None | |
| Effective Age (Yrs) 33 | | | | Screens | ALUMINUM | [X] Driveway # of Cars 2 | |
| Attic | [ ] None | Heating [X] FWA [ ] HW [ ] Radiant | | Amenities | [X] WoodStove(s) #0 | Driveway Surface CONCRETE / AVG | |
| [ ] Drop Stair | [ ] Stairs | [ ] Other | Fuel | [ ] Fireplace(s) # 0 | [X] Fence IRON | [X] Garage # of Cars 2 | |
| [ ] Floor | [X] Scuttle | Cooling [X] Central Air Conditioning | | [X] Patio/Deck CVD | [X] Porch COVERED | [ ] Carport # of Cars 0 | |
| [ ] Finished | [ ] Heated | [ ] Individual | [ ] Other | [ ] Pool NONE | [ ] Other NONE | [X] Att. [ ] Det. [ ] Built-in | |

Appliances [X] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [X] Microwave [X] Washer/Dryer [ ] Other (describe)
Finished area above grade contains: 8 Rooms 4 Bedrooms 2.5 Bath(s) 2,923 Square Feet of Gross Living Area Above Grade
Additional Features SEE ATTACHED ADDENDUM

Comments on the Improvements OVERALL CONDITION IS ACCEPTABLE AND CONSISTENT WITH THAT TYPICALLY FOUND IN THE SUBJECT MARKET AREA. THE SUBJECT IMPROVEMENTS APPEAR TO BE PROPERLY CONSTRUCTED OF MATERIALS AND FINISH THAT ARE ACCEPTABLE IN THIS MARKET AND PRICE RANGE. NO SIGNIFICANT REMODELING OR RENOVATION HAS TAKEN PLACE AND NONE WOULD BE EXPECTED

| | Subject | Comparable 1 | | Comparable 2 | | Comparable 3 | |
|---|---|---|---|---|---|---|---|
| Data Source(s) | | CRMLS#T[illegible] DOM 10 | | CRMLS#[illegible] DOM [illegible] | | CRMLS#[illegible]102948 DOM 13 | |
| Verification Source(s) | | AGENT | | AGENT | | AGENT | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing Concessions | | CONVENTIONAL NONE | | FHA NONE | | CONVENTIONAL NONE | |
| Date of Sale/Time | | 09/15/2011 | | 08/25/2011 | | 09/20/2011 | |
| Location | SUBURBAN | SUBURBAN | | SUBURBAN | | SUBURBAN | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 0.22 AC | 0.17 AC | | 0.17 AC | | 0.20 AC | |
| View | LAKE | NONE | +5,000 | GOLF COURSE | | NONE | +5,000 |
| Design (Style) | CONTEMPORARY | CONTEMPORARY | | CONTEMPORARY | | CONTEMPORARY | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Actual Age | 33 | 30 | | 24 | | 25 | |
| Condition | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Above Grade Room Count (Total / Bdrms / Baths) | 8 / 4 / 2.5 | 8 / 4 / 2.0 | +2,000 | 7 / 3 / 2.5 | | 8 / 4 / 2.5 | |
| Gross Living Area 35.00 | 2,923 sq. ft. | 2,977 sq. ft. | | 2,842 sq. ft. | | 2,824 sq. ft. | |
| Basement & Finished Rooms Below Grade | N/A NONE | N/A NONE | | N/A NONE | | N/A NONE | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | FWA / CAC | FWA / CAC | | FWA / CAC | | FWA / CAC | |
| Energy Efficient Items | NONE NOTED | NONE NOTED | | NONE NOTED | | NONE NOTED | |
| Garage/Carport | 2/GRG;GRG-ATTCHD | 2/GRG;GRG-ATTCHD | | 2/GRG;GRG-ATTCHD | | 3/GRG;GRG-ATTCHD | -5,000 |
| Porch/Patio/Deck | PORCH | SIMILAR | | SIMILAR | | SIMILAR | |
| | | | | | | | |
| POOL / SPA | NONE | NONE | | NONE | | POOL / SPA | -20,000 |
| | | | | | | | |
| Net Adjustment (Total) | | [X] + [ ] - $ | 7,000 | [X] + [ ] - $ | 0 | [ ] + [X] - $ | 20,000 |
| Adjusted Sale Price of Comparables | | Net Adj. 2.5% Gross Adj. 2.5% $ | 282,000 | Net Adj. 0.0% Gross Adj. 0.0% $ | 270,000 | Net Adj. -6.3% Gross Adj. 9.5% $ | 296,000 |

Summary of Sales Comparison Approach THE CLOSED SALES USED ABOVE WERE DETERMINED TO BE THE MOST COMPARABLE TO THE SUBJECT PROPERTY. ALL SALES ARE LOCATED IN THE SUBJECT'S NEIGHBORHOOD. ADJUSTMENTS WERE DERIVED FROM PREVIOUS MARKET ANALYSIS. THE SEARCH CRITERIA FOR THE SELECTED COMPS WAS 3-5 BEDROOMS, 2-3 BATHROOMS, 2500-3500 SQ FT GLA, 1968-1988 YEAR BUILT, AND THE COMMUNITY OF CANYON LAKE.

## COST APPROACH TO VALUE

Site Value Comments BECAUSE THERE IS INSUFFICIENT MARKET EVIDENCE TO CREDIBLY SUPPORT THE SITE VALUE AND DERIVATION OF TOTAL DEPRECIATION, THE COST APPROACH IS NOT GIVEN ANY CONSIDERATION IN THE APPRAISER'S OPINION OF VALUE.

ESTIMATED [ ] REPRODUCTION OR [X] REPLACEMENT COST NEW

Source of cost data BUILDING-COST.NET

Quality rating from cost service AVERAGE Effective date of cost data 10 / 2011

Comments on Cost Approach (gross living area calculations, depreciation, etc.)

PHYSICAL DEPRECIATION WAS CALCULATED USING THE EFFECTIVE AGE/ECONOMIC LIFE METHOD. NO SIGNIFICANT FUNCTIONAL OR EXTERNAL DEPRECIATION WAS NOTED.

THE ESTIMATED REMAINING ECONOMIC LIFE IS 37 YEARS.

OPINION OF SITE VALUE .......... = $

Dwelling Sq. Ft. @ $ .......... = $

Sq. Ft. @ $ .......... = $

Garage/Carport Sq. Ft. @ $ .......... = $

Total Estimate of Cost-New .......... = $

Less Physical Functional External

Depreciation = $( )

Depreciated Cost of Improvements .......... = $

"As-is" Value of Site Improvements .......... = $

INDICATED VALUE BY COST APPROACH .......... = $

## INCOME APPROACH TO VALUE

Estimated Monthly Market Rent $ N/A X Gross Rent Multiplier N/A = $ N/A Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM) HOMES IN THIS PRICE RANGE AND NEIGHBORHOOD ARE TYPICALLY PURCHASED FOR USE AND NOT INCOME. THUS, THE INCOME APPROACH LACKS RATIONALE AND WAS NOT DEVELOPED.

## RECONCILIATION

Indicated Value by: Sales Comparison Approach $ 285,000 Cost Approach (if developed) $ Income Approach (if developed) $ N/A

THE HIGH QUALITY OF THE DATA USED IN THE SALES COMPARISON APPROACH DEMONSTRATES ITS VIABILITY AS THE BEST VALUE INDICATOR, WITH THE COST APPROACH IN A STRONG SUPPORTING ROLE. AS STATED ABOVE, THE INCOME APPROACH TO VALUE WAS NOT DEVELOPED.

This appraisal is made [X] "as is," [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Data Source(s) | | CRMLS#I110[illegible] | | CRMLS#I110[illegible] | | | |
| Verification Source(s) | | AGENT | | AGENT | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing Concessions | | CONVENTIONAL NONE | | CONVENTIONAL NONE | | | |
| Date of Sale/Time | | ACTIVE LISTING | | ACTIVE LISTING | | | |
| Location | SUBURBAN | SUBURBAN | | SUBURBAN | | | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | | |
| Site | 0.22 AC | 0.24 AC | | 0.26 AC | | | |
| View | LAKE | LAKE | | LAKE | | | |
| Design (Style) | CONTEMPORARY | CONTEMPORARY | | CONTEMPORARY | | | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | | |
| Actual Age | 33 | 32 | | 31 | | | |
| Condition | AVERAGE | AVERAGE | | AVERAGE | | | |
| Above Grade Room Count (Total / Bdrms. / Baths) | 8 / 4 / 2.5 | 8 / 4 / 3.0 | -2,000 | 8 / 4 / 2.5 | | Total / Bdrms. / Baths | |
| Gross Living Area 35.00 | 2,923 sq. ft. | 2819 sf sq. ft. | 3,640 | 3080 sf sq. ft. | -5,495 | sq. ft. | |
| Basement & Finished Rooms Below Grade | N/A NONE | N/A NONE | | N/A NONE | | | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | | |
| Heating/Cooling | FWA / CAC | FWA / CAC | | FWA / CAC | | | |
| Energy Efficient Items | NONE NOTED | NONE NOTED | | NONE NOTED | | | |
| Garage/Carport | 2/GRG;GRG-ATTCHD | 2/GRG;GRG-ATTCHD | | 2/GRG;GRG-ATTCHD | | | |
| Porch/Patio/Deck | PORCH | SIMILAR | | SIMILAR | | | |
| | | | | | | | |
| POOL / SPA | NONE | NONE | | NONE | | | |
| | | | | | | | |
| Net Adjustment (Total) | | [X] + [ ] - $ | 1,640 | [ ] + [X] - $ | 5,495 | [ ] + [ ] - $ | |
| Adjusted Sale Price of Comparables | | Net Adj. 0.6% Gross Adj. 1.9% $ | 291,540 | Net Adj. -2.1% Gross Adj. 2.1% $ | 254,405 | Net Adj. % Gross Adj. % $ | |

SALES COMPARISON APPROACH

Summary of Sales Comparison Approach CLARIFICATION OF INTENDED USE AND INTENDED USER:

THE INTENDED USER OF THIS APPRAISAL REPORT IS THE LENDER/CLIENT.

THE INTENDED USE IS TO EVALUATE THE PROPERTY THAT IS THE SUBJECT OF THIS APPRAISAL AND ARRIVE AT AN OPINION OF VALUE, SUBJECT TO THE STATED SCOPE OF WORK, PURPOSE OF THE APPRAISAL, REPORTING REQUIREMENTS OF THIS APPRAISAL REPORT FORM, AND DEFINITION OF MARKET VALUE. NO ADDITIONAL INTENDED USERS ARE IDENTIFIED BY THE APPRAISER.

CLARIFICATION OF THE TERM "COMPLETE VISUAL INSPECTION":
THIS REPORT STATES THAT THE APPRAISER HAS PERFORMED A "COMPLETE VISUAL INSPECTION" OF THE PROPERTY. IT SHOULD BE UNDERSTOOD THAT THE "COMPLETE VISUAL INSPECTION" WAS PERFORMED WITHIN THE CONTEXT OF THE INTENDED USE AND INTENDED USER IDENTIFIED AND CLARIFIED ABOVE. THAT IS, THE APPRAISER'S INSPECTION OF THE PROPERTY IS FOR VALUATION PURPOSES ONLY AND IS STRICTLY FOR THE PURPOSE OF ASSISTING THE LENDER/CLIENT (AND ONLY THE LENDER/CLIENT) IN EVALUATING THE PROPERTY FOR AN OPINION OF VALUE.

THE APPRAISER'S INSPECTION OF THE PROPERTY WAS LIMITED TO WHAT WAS READILY OBSERVABLE WITHOUT MOVING FURNITURE, FLOOR COVERINGS OR PERSONAL PROPERTY. UNLESS OTHERWISE STATED, THE APPRAISER DID NOT VIEW ATTICS, CRAWLSPACES OR ANY OTHER AREA THAT WOULD INVOLVE THE USE OF LADDERS OR SPECIAL EQUIPMENT. THE APPRAISER'S VIEWING OF THE PROPERTY WAS LIMITED TO SURFACE AREAS ONLY AND CAN OFTEN BE COMPROMISED BY LANDSCAPING, PLACEMENT OF PERSONAL PROPERTY OR EVEN WEATHER CONDITIONS. MOST IMPORTANTLY, THE APPRAISER'S INSPECTION OF THE PROPERTY IS FAR DIFFERENT FROM AND MUCH LESS INTENSIVE THAN THE TYPE OF INSPECTIONS PERFORMED TO DISCOVER PROPERTY DEFECTS. THE APPRAISER IS NOT A HOME INSPECTOR, BUILDING CONTRACTOR, PEST CONTROL SPECIALIST OR STRUCTURAL ENGINEER. AN APPRAISAL IS NOT A SUBSTITUTE FOR A HOME INSPECTION OR AN INSPECTION BY A QUALIFIED EXPERT IN DETERMINING ISSUES SUCH AS, BUT NOT LIMITED TO, FOUNDATION SETTLEMENT OR STABILITY, MOISTURE PROBLEMS, WOOD DESTROYING (OR OTHER) INSECTS, RODENTS OR PESTS, RADON GAS OR LEAD-BASED PAINT. THE CLIENT IS INVITED AND ENCOURAGED TO EMPLOY THE SERVICES OF APPROPRIATE EXPERTS TO ADDRESS ANY AREA OF CONCERN.

USE OF COST APPROACH FOR INSURANCE PURPOSES:
REPLACEMENT COST FIGURES USED IN DEVELOPING THE COST APPROACH ARE FOR VALUATION PURPOSES ONLY. NO ONE, CLIENT OR THIRD PARTY, SHOULD RELY ON THESE FIGURES FOR INSURANCE PURPOSES. THE DEFINITION OF "MARKET VALUE" ON PAGE SIX OF THIS

THE SUBJECT NEIGHBORHOOD IS MOSTLY COMPRISED OF SINGLE AND TWO STORY, STUCCO ON WOOD FRAMED DWELLINGS THAT ARE, FOR THE MOST PART, WELL MAINTAINED WITH EFFECTIVE AGES SOMEWHAT LESS THAN ACTUAL AGES. MOST HOMES ARE OF AVERAGE QUALITY MATERIALS AND DISPLAY A HIGH LEVEL OF CONFORMITY AND COMPATIBILITY. THE VAST MAJORITY OF NEIGHBORHOOD HOMES ARE OWNER OCCUPIED. THE MAJOR EMPLOYMENT CENTERS ARE WITHIN A REASONABLE COMMUTE AND EASILY ACCESSIBLE VIA INTERSTATE 15 , THE ENTRANCE TO WHICH IS WITHIN ABOUT THREE MILES FROM THE SUBJECT. THE PRIMARY DRIVER OF THIS NEIGHBORHOOD'S POPULARITY IS CONVENIENCE TO SHOPPING AND SCHOOLS. NUMEROUS STRIP MALLS, SUPERMARKET CHAINS, PHARMACY CHAINS AND A MAJOR SHOPPING MALL WITH ESTABLISHED ANCHOR STORES ARE ALL WITHIN A FEW MILES.

OVERALL, THIS IS A FAIRLY WELL ESTABLISHED AND STABLE COMMUNITY. THE CONVENIENT LOCATION WITH EASY ACCESS TO EMPLOYMENT LINKAGES, PROXIMITY TO COMMUNITY SERVICES AND PERCEIVED GOOD QUALITY OF THE LOCAL SCHOOL SYSTEM SHOULD CONTINUE TO HAVE GOOD MARKET APPEAL FOR THE FORESEEABLE FUTURE.

**NEIGHBORHOOD MARKET CONDITIONS**

A BROAD VARIETY OF MORTGAGE FINANCING IS AVAILABLE AT RATES PURCHASERS CONSIDER ATTRACTIVE. SELLER FINANCING IS VIRTUALLY NONEXISTENT, ALTHOUGH SELLER CONCESSIONS OF A FEW THOUSAND DOLLARS ARE NOT UNCOMMON. MLS RECORDS INDICATE AN AVERAGE MARKET TIME OF 1-3 MONTHS, WHICH IS CONSIDERED A REASONABLE EXPOSURE TIME FOR THE SUBJECT. MOST NEIGHBORHOOD HOMES SELL WITHIN 5-8% OF LIST PRICE, PROVIDED THEIR DESIGN, APPEAL AND CONDITION ARE CONSISTENT WITH MARKET EXPECTATIONS. GIVEN THE MARKET DATA ANALYZED BY THE APPRAISER, THERE ARE NO FISCAL OR ECONOMIC TRENDS EXPECTED TO OCCUR THAT WOULD SIGNIFICANTLY IMPACT THE RELATIVELY STABLE MARKET CURRENTLY EXPERIENCED IN THIS NEIGHBORHOOD.

**SITE COMMENTS**

THIS IS BASICALLY A FLAT, SLIGHTLY ABOVE ROAD GRADE SITE THAT IS VERY TYPICAL OF THE NEIGHBORHOOD IN TERMS OF SIZE, TOPOGRAPHY, VIEW AND GENERAL APPEAL. IT PROVIDES A SUITABLE SETTING FOR THE IMPROVEMENTS AND IS CONSISTENT WITH MARKET EXPECTATIONS IN THIS PRICE RANGE. LANDSCAPING CONSISTS OF SOME FOUNDATION PLANTINGS, SHRUBBERY AND A FEW TREES. WHILE NO READILY APPARENT ADVERSE SITE CONDITIONS OR EXTERNAL FACTORS WERE NOTED, MANY SITE-RELATED ISSUES ARE BEYOND THE SCOPE OF THIS ASSIGNMENT. STATEMENTS REGARDING ZONING COMPLIANCE ARE INTENDED ONLY IN THE MOST GENERAL SENSE. ZONING AND BUILDING ORDINANCES VARY SIGNIFICANTLY FROM ONE MUNICIPALITY TO ANOTHER AND CAN BE EXTREMELY DETAILED. THE SCOPE OF THIS ASSIGNMENT DOES NOT INCLUDE A COMPARISON OF EVERY POTENTIALLY SIGNIFICANT CHARACTERISTIC OF THE SUBJECT PROPERTY'S SITE AND IMPROVEMENTS RELATIVE TO ZONING AND BUILDING ORDINANCES. UNLESS OTHERWISE NOTED, STANDARD UTILITY AND RIGHT-OF-WAY EASEMENTS ARE INSIGNIFICANT TO VALUE. HOWEVER, A CURRENT LOCATIONAL OR BOUNDARY SURVEY, WHICH WAS UNAVAILABLE TO THE APPRAISER, MAY REVEAL ENCROACHMENTS, EASEMENTS, ZONING VIOLATIONS OR OTHER MATTERS OF INTEREST THAT COULD WARRANT MODIFICATION OF THE APPRAISED VALUE.

THE SUBJECT IS ON PROPANE WHICH IS COMMON FOR THIS MARKET AREA AND DOES NOT EFFECT OPINION OF VALUES.

**ADDITIONAL FEATURES**

THE PUBLIC RECORDS INDICATE THAT THE GLA OF THE SUBJECT IS 2410 SQ FT, HOWEVER THERE WAS A 516 SQ FT UNPERMITTED ADDITION ADDED. THE ADDITION IS CONFORMING TO THE STRUCTURE AND APPEARS TO HAVE BEEN BUILT WITH QUALITY MATERIALS AND COMPLETED IN A PROFESSIONAL WORKMAN-LIKE MANNER, THEREFORE, VALUE WAS GIVEN TO THIS ADDITION WITH A TOTAL GLA OF APPROXIMATELY 2923 SQ FT.

intended use and its use by any other parties is prohibited. The appraiser is not responsible for unauthorized use of the report.

The appraiser's certification appearing in this appraisal report is subject to the following conditions and to such other specific conditions as are set forth by the appraiser in the report. All extraordinary assumptions and hypothetical conditions are stated in the report and might have affected the assignment results.

1. The appraiser assumes no responsibility for matters of a legal nature affecting the property appraised or title thereto, nor does the appraiser render any opinion as to the title, which is assumed to be good and marketable. The property is appraised as though under responsible ownership.

2. Any sketch in this report may show approximate dimensions and is included only to assist the reader in visualizing the property. The appraiser has made no survey of the property.

3. The appraiser is not required to give testimony or appear in court because of having made the appraisal with reference to the property in question, unless arrangements have been previously made thereto.

4. Neither all, nor any part of the content of this report, copy or other media thereof (including conclusions as to the property value, the identity of the appraiser, professional designations, or the firm with which the appraiser is connected), shall be used for any purposes by anyone but the client and other intended users as identified in this report, nor shall it be conveyed by anyone to the public through advertising, public relations, news, sales, or other media, without the written consent of the appraiser.

5. The appraiser will not disclose the contents of this appraisal report unless required by applicable law or as specified in the Uniform Standards of Professional Appraisal Practice.

6. Information, estimates, and opinions furnished to the appraiser, and contained in the report, were obtained from sources considered reliable and believed to be true and correct. However, no responsibility for accuracy of such items furnished to the appraiser is assumed by the appraiser.

7. The appraiser assumes that there are no hidden or unapparent conditions of the property, subsoil, or structures, which would render it more or less valuable. The appraiser assumes no responsibility for such conditions, or for engineering or testing, which might be required to discover such factors. This appraisal is not an environmental assessment of the property and should not be considered as such.

8. The appraiser specializes in the valuation of real property and is not a home inspector, building contractor, structural engineer, or similar expert, unless otherwise noted. The appraiser did not conduct the intensive type of field observations of the kind intended to seek and discover property defects. The viewing of the property and any improvements is for purposes of developing an opinion of the defined value of the property, given the intended use of this assignment. Statements regarding condition are based on surface observations only. The appraiser claims no special expertise regarding issues including, but not limited to: foundation settlement, basement moisture problems, wood destroying (or other) insects, pest infestation, radon gas, lead based paint, mold or environmental issues. Unless otherwise indicated, mechanical systems were not activated or tested.

This appraisal report should not be used to disclose the condition of the property as it relates to the presence/absence of defects. The client is invited and encouraged to employ qualified experts to inspect and address areas of concern. If negative conditions are discovered, the opinion of value may be affected.

Unless otherwise noted, the appraiser assumes the components that constitute the subject property improvement(s) are fundamentally sound and in working order.

Any viewing of the property by the appraiser was limited to readily observable areas. Unless otherwise noted, attics and crawl space areas were not accessed. The appraiser did not move furniture, floor coverings or other items that may restrict the viewing of the property.

9. Appraisals involving hypothetical conditions related to completion of new construction, repairs or alteration are based on the assumption that such completion, alteration or repairs will be competently performed.

10. Unless the intended use of this appraisal specifically includes issues of property insurance coverage, this appraisal should not be used for such purposes. Reproduction or Replacement cost figures used in the cost approach are for valuation purposes only, given the intended use of the assignment. The Definition of Value used in this assignment is unlikely to be consistent with the definition of Insurable Value for property insurance coverage/use.

11. The ACI General Purpose Appraisal Report (GPAR™) is not intended for use in transactions that require a Fannie Mae 1004/Freddie Mac 70 form, also known as the Uniform Residential Appraisal Report (URAR).

Additional Comments Related To Scope Of Work, Assumptions and Limiting Conditions

THE SCOPE OF THIS ASSIGNMENT INCLUDED AN INTERIOR AND EXTERIOR VIEWING OF THE SUBJECT PROPERTY ON THE EFFECTIVE DATE OF THE APPRAISAL. AS PART OF THE PROPERTY VIEWING, SIGNIFICANT PHYSICAL CHARACTERISTICS WERE CATALOGED AND ANALYZED, AND THE IMPROVEMENTS WERE MEASURED AND PHOTOGRAPHED. THE APPRAISER USED DATA FROM A VARIETY OF SOURCES, INCLUDING THE LOCAL MLS SYSTEM AND COUNTY RECORDS, AND RESEARCHED DATA ON RECENT COMPARABLE SALES IN THE GENERAL MARKET AREA. THE SALES COMPARISON APPROACH AND THE COST APPROACH WERE DETERMINED TO PROVIDE MEANINGFUL INPUT AND WERE DEVELOPED, WHILE THE INCOME APPROACH WAS NOT. THE APPRAISER HAS SUMMARIZED RELEVANT ANALYSIS AND CONCLUSIONS IN THIS REPORT, BUT ADDITIONAL PERTINENT INFORMATION MAY ALSO BE FOUND IN THE APPRAISER'S FILES.

involved.

4. The appraiser has no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

5. The appraiser's engagement in this assignment was not contingent upon developing or reporting predetermined results.

6. The appraiser's compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

7. The appraiser's analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

8. Unless otherwise noted, the appraiser has made a personal inspection of the property that is the subject of this report.

9. Unless noted below, no one provided significant real property appraisal assistance to the appraiser signing this certification. Significant real property appraisal assistance provided by:

Additional Certifications:

Definition of Value: [X] Market Value [ ] Other Value:

Source of Definition: "THE APPRAISAL OF REAL ESTATE" TWELFTH EDITION, APPRAISAL INSTITUTE, CHICAGO, IL

THE MOST PROBABLE PRICE WHICH A SPECIFIED INTEREST IN REAL PROPERTY IS LIKELY TO BRING UNDER ALL OF THE FOLLOWING CONDITIONS:

1. CONSUMMATION OF A SALE OCCURS AS OF A SPECIFIED DATE.
2. AN OPEN AND COMPETITIVE MARKET EXISTS FOR THE PROPERTY INTEREST APPRAISED.
3. THE BUYER AND SELLER ARE EACH ACTING PRUDENTLY AND KNOWLEDGEABLY.
4. THE PRICE IS NOT AFFECTED BY UNDUE STIMULUS.
5. THE BUYER AND SELLER ARE TYPICALLY MOTIVATED.
6. BOTH PARTIES ARE ACTING IN WHAT THEY CONSIDER THEIR BEST INTEREST.
7. MARKETING EFFORTS WERE ADEQUATE AND A REASONABLE TIME WAS ALLOWED FOR EXPOSURE TO THE OPEN MARKET.
8. PAYMENT WAS MADE IN CASH IN U.S. DOLLARS OR IN TERMS OF FINANCIAL ARRANGEMENTS COMPARABLE THERETO.
9. THE PRICE REPRESENTS THE NORMAL CONSIDERATION FOR THE PROPERTY SOLD, UNAFFECTED BY SPECIAL OR CREATIVE FINANCING OR SALES CONCESSIONS GRANTED BY ANYONE ASSOCIATED WITH THE SALE.

ADDRESS OF THE PROPERTY APPRAISED:
22801 LASSEN DR
CANYON LAKE, CA 92587-7939

EFFECTIVE DATE OF THE APPRAISAL: OCTOBER 9, 2011

APPRAISED VALUE OF THE SUBJECT PROPERTY $ 285,000

| APPRAISER | SUPERVISORY APPRAISER |
|---|---|
| Signature: C E Elliott | Signature: |
| Name: C. E. ELLIOTT | Name: |
| State Certification # | State Certification # |
| or License # AL 032022 | or License # |
| or Other (describe): State #: | State: |
| State: CA | Expiration Date of Certification or License: |

GROSS LIVING AREA (GLA) 2,923

| Area(s) | Area | % of GLA | % of GBA |
|---|---|---|---|
| Living | 2,923 | | 100.00 |
| Level 1 | 2,923 | 100.00 | 100.00 |
| Level 2 | 0 | 0.00 | 0.00 |
| Level 3 | 0 | 0.00 | 0.00 |
| Other | 444 | 15.19 | 15.19 |
| GBA | | | |
| Basement ☐ | 0 | | |
| Garage ☐ | 600 | | |
| ☐ | | | |

| Area Measurements | | | | | | | Area Type | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Measurements | | | | Factor | | Total | Level 1 | Level 2 | Level 3 | Other | Bsmt. | Garage |
| 7.00 | x | 69.00 | x | 1.00 | = | 483.00 | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 17.00 | x | 89.00 | x | 1.00 | = | 1,513.00 | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 5.00 | x | 5.42 | x | 0.50 | = | 13.54 | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 30.00 | x | 7.00 | x | 1.00 | = | 210.00 | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 7.00 | x | 7.58 | x | 0.50 | = | 26.54 | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 5.00 | x | 83.58 | x | 1.00 | = | 417.92 | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 7.00 | x | 37.00 | x | 1.00 | = | 259.00 | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 25.00 | x | 24.00 | x | 1.00 | = | 600.00 | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

FRONT VIEW OF
SUBJECT PROPERTY

Appraised Date: October 9, 2011
Appraised Value: $ 285,000



REAR VIEW OF
SUBJECT PROPERTY



STREET SCENE



COMPARABLE SALE #1



30140 BUCK TAIL DR
CANYON LAKE, CA 92587-7701
Sale Date: 09/15/2011
Sale Price: $ 275,000

COMPARABLE SALE #2



30845 GOLDEN GATE DR
CANYON LAKE, CA 92587-7724
Sale Date: 08/25/2011
Sale Price: $ 270,000

COMPARABLE SALE #3



22735 CASTLE CRAG DR
CANYON LAKE, CA 92587
Sale Date: 09/20/2011
Sale Price: $ 316,000

 

LIVING ROOM                                     KITCHEN

 

FAMILY ROOM                                     LAKE VIEW



MASTER BEDROOM



BEDROOM



BEDROOM



BATHROOM





1/2 BATHROOM                    MASTER BATHROOM





Sketch by Apex Medina™

Comments:

## AREA CALCULATIONS SUMMARY

| Code | Description | Net Size | Net Totals |
|---|---|---|---|
| GLA1 | First Floor | 2923.0 | 2923.0 |
| GAR | Garage | 600.0 | 600.0 |
| P/P | Covered Patio | 444.0 | 444.0 |

## LIVING AREA BREAKDOWN

| Breakdown | | | | | Subtotals |
|---|---|---|---|---|---|
| First Floor | | | | | |
| | 69.0 | x | 7.0 | | 483.0 |
| | 89.0 | x | 17.0 | | 1513.0 |
| 0.5 x | 5.4 | x | 5.0 | | 13.5 |
| | 7.0 | x | 30.0 | | 210.0 |
| 0.5 x | 7.6 | x | 7.0 | | 26.5 |
| | 83.6 | x | 5.0 | | 417.9 |
| | 37.0 | x | 7.0 | | 259.0 |

353-19
T.R.A. 023-003
POR.SEC 35 T.5S.,R.4W
CITY OF CANYON LAKE
LOT J
DRIVE
(PRIVATE STREET)
COMMON LOT
3.78 AC M/L
LOT I
LASSON
DRIVE
LOT F
VACATION
LOT K
KLAMATH CT
LOT L
GOLD RUSH PLACE
POR LOT A
2.87 AC M/L
MB 58/76-86 TRACT MAP NO 3720
Sep 2007
DATA: RS 71/35
ASSESSOR'S MAP BK353 PG.19
Riverside County, Calif.
AP WAS PREPARED FOR ASSESSMENT PURPOSES ONLY. NO LIABILITY
UMED FOR THE ACCURACY OF THE DATA SHOWN. ASSESSOR'S PARCEL
T COMPLY WITH LOCAL LOT-SPLIT OR BUILDING SITE ORDINANCES.

Comparable Sale 5
29026 Scout Ct
Sun City, CA 92587
(0.87 miles WNW)
Subject
22801 Lassen Dr
Sun City, CA 92587
Comparable Sale 3
22735 Castle Crag Dr
Sun City, CA 92587
(0.32 miles SSW)
Comparable Sale 1
30140 Buck Tail Dr
Sun City, CA 92587
(1.40 miles SSE)
Comparable Sale 4
22315 Canyon Lake Dr N
Sun City, CA 92587
(0.85 miles SSW)
Comparable Sale 2
30845 Golden Gate Dr
Sun City, CA 92587
(1.29 miles SSE)
Canyon Lake
Railroad Canyon Reservoir
Canyon Lake Country Club
RAILROAD Canyon Rd
Vacation Dr
Lassen Dr
Cheyenne Canyon Dr
Canyon Lake Dr N
Hecht Rd
Cove View St
Gray Fox Dr
Skylink Dr
Old Newport Rd
Cascade Dr
Snow Water Rd
Longhorn Dr
Cassandra Dr
Newport Dr
Cooper View Dr
Casa Bonita Dr
Vista Way
Buck Tail Dr
Big Tee Dr
Desert Rose Ln



Subject
22801 LASSEN DRIVE
CANYON LAKE, CA 92587-7939

## Flood Information

Community: 060753 - CANYON LAKE, CITY OF

Property is not in a FEMA special flood hazard area.

Map Number: 06065C2034G
Panel: 2034G
Zone: X

Map Date: 08/28/2008
FIPS: 06065

## FloodMap Legend

Flood Zones

Areas inundated by 500-year flooding

Areas outside of the 100- and 500-year floodplains

Areas inundated by 100-year flooding

Areas inundated by 100-year flooding with velocity hazard

22801 Lassen Dr, Canyon Lake, CA 92587
©2010 Google

... The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

MARKET RESEARCH & ANALYSIS

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 5 | 1 | 5 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | 0.83 | 0.33 | 1.67 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Total # of Comparable Active Listings | 12 | 13 | 7 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | 14.40 | 39.00 | 4.20 | ☐ Declining | ☒ Stable | ☐ Increasing |
| **Median Sale & List Price, DOM, Sale/List %** | **Prior 7–12 Months** | **Prior 4–6 Months** | **Current – 3 Months** | **Overall Trend** | | |
| Median Comparable Sale Price | 275,000 | 242,000 | 275,000 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 102 | 68 | 58 | ☒ Declining | ☐ Stable | ☐ Increasing |
| Median Comparable List Price | 272,500 | 279,900 | 259,900 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | 175 | 159 | 53 | ☒ Declining | ☐ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | 100.00% | 98.78% | 100.00% | ☐ Increasing | ☒ Stable | ☐ Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | ☐ Yes | ☒ No | | ☐ Declining | ☒ Stable | ☐ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).
THE DATA USED IN THE GRID ABOVE DOES NOT INDICATE THERE WERE ANY CONCESSIONS ASSOCIATED WITH THE REPORTED TRANSACTIONS. HOWEVER, THIS IS NOT A MANDATORY REPORTING FIELD FOR AGENTS AND THERE MAY BE SOME TRANSACTIONS THAT DO INCLUDE CONCESSIONS, BUT HAVE NOT BEEN REPORTED. IT IS BEYOND THE SCOPE OF THIS ASSIGNMENT TO CONFIRM EACH SALE USED IN THE MARKET CONDITIONS REPORT.

Are foreclosure sales (REO sales) a factor in the market? ☐ Yes ☒ No If yes, explain (including the trends in listings and sales of foreclosed properties).
THE CARETS INDICATES THERE WERE 11 CLOSED SALES DURING THE PAST 12 MONTHS AND 7 OF THOSE SALES WERE EITHER FORECLOSURES OR SHORT SALES WHICH IS 64% OF THE TOTAL TRANSACTIONS IN THIS MARKET AREA. PRIOR MONTHS 7-12: 5 SALES; 4 FORECLOSURES OR SHORT SALES; 80% OF SALES FOR THIS PERIOD. 4-6: 1 SALES; 1 FORECLOSURES OR SHORT SALES; 100% OF SALES FOR THIS PERIOD. 0-3: 5 SALES; 2 FORECLOSURES OR SHORT SALES; 40% OF SALES FOR THIS PERIOD.

Cite data sources for above information. THE CARETS WAS THE DATA SOURCE USED TO COMPLETE THE MARKET CONDITIONS ADDENDUM.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
A BROAD VARIETY OF MORTGAGE FINANCING IS AVAILABLE AT RATES PURCHASERS CONSIDER ATTRACTIVE. SELLER FINANCING IS VIRTUALLY NONEXISTENT, ALTHOUGH SELLER CONCESSIONS OF A FEW THOUSAND DOLLARS ARE NOT UNCOMMON. MLS RECORDS INDICATE AN AVERAGE MARKET TIME OF UNDER THREE MONTHS, WHICH IS CONSIDERED A REASONABLE EXPOSURE TIME FOR THE SUBJECT. MOST NEIGHBORHOOD HOMES SELL WITHIN 5-8% OF LIST PRICE, PROVIDED THEIR DESIGN, APPEAL AND CONDITION ARE CONSISTENT WITH MARKET EXPECTATIONS. GIVEN THE MARKET DATA ANALYZED BY THE APPRAISER, THERE ARE NO FISCAL OR ECONOMIC TRENDS EXPECTED TO OCCUR THAT WOULD SIGNIFICANTLY IMPACT THE RELATIVELY STABLE MARKET CURRENTLY EXPERIENCED IN THIS NEIGHBORHOOD.

CONDO / CO-OP PROJECTS

If the subject is a unit in a condominium or cooperative project, complete the following: Project Name:

| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab. Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project? ☐ Yes ☐ No If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

**APPRAISER** **SUPERVISORY APPRAISER (ONLY IF REQUIRED)**

Signature Signature

# EXHIBIT 4 – DEED OF TRUST

DOC # 2004-0882182
11/05/2004 08:00A Fee:39.00
Page 1 of 11
Recorded in Official Records
County of Riverside
Gary L. Orso
Assessor, County Clerk & Recorder

Recording requested by and, when recorded return to:

WASHINGTON MUTUAL BANK, FA
1111 E. KATELLA AVE.
STE 110
ORANGE, CA 92867
ATTN: TICOR TITLE NLS

5400711162

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|---|---|---|---|---|---|---|
|  | 1 |  | 11 |  | 1 |  |  |  |  |
|  |  |  |  |  |  |  |  |  | U5 |
| A | R | L |  |  | COPY | LONG | REFUND | NCHG | EXAM |

Washington Mutual

# EQUITY LINE OF CREDIT DEED OF TRUST

T LJ

39

THIS DEED OF TRUST (Security Instrument) is between:
CHAD A. BOLTON

whose address is: 22801 LASSEN DR
CANYON LAKE, CA 92587-7939 ("Grantor"),
TICOR TITLE NLS, a
CALIFORNIA corporation, the address of which is
1111 E. KATELLA AVE.
ORANGE, CA 92867 ("Trustee"); and
Washington Mutual Bank, FA, a federal association, which is organized and existing under the laws of the United States of America, and whose address is 400 E. Main Street, Stockton, CA 95290 ("Beneficiary") and its successors or assigns.

1. **Granting Clause.** For the benefit of Beneficiary, Grantor hereby grants, bargains, sells and conveys to Trustee in trust, with power of sale, the real property in RIVERSIDE County, California, described below, and all rights and interest in it Grantor ever gets:
LT: 87 SD: TRACT 3720 BK: 58 PG: 76-86, COUNTY OF RIVERSIDE, CA

ACCOMMODATION ONLY:
THIS INSTRUMENT FILED FOR RECORD BY TICOR TITLE COMPANY IS AN ACCOMMODATION ONLY. IT HAS NOT BEEN EXAMINED AS TO ITS EXECUTION, OR AS TO ITS EFFECTS UPON TITLE.

Tax Parcel Number: 353-191-005-5 together with all

insurance proceeds and condemnation proceeds related to it income, rents and profits from it; all plumbing, lighting, air conditioning and heating apparatus and equipment and other improvements; and all fencing, blinds, drapes, floor coverings, built-in appliances, and other fixtures, at any time installed on or in or used in connection with such real property.

All of the property described above will be called the "Property". If any of the Property is personal property, this Deed of Trust is also a Security Agreement which grants Beneficiary, as secured party, a security interest in all such property. Despite any other provision of this Deed of Trust, however, Beneficiary is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such security interest would be prohibited by applicable law. As used herein "State" shall refer to the state of California.

2. **Obligation Secured**. This Deed of Trust is given to secure performance of each promise of Grantor contained herein and in a Home Equity Line of Credit Agreement and Disclosure with Beneficiary of even date herewith with a maximum credit limit of $250,000.00 the ("Credit Agreement"), including any extensions, renewals or modifications thereof, and repayment of all sums borrowed by Grantor under the Credit Agreement, with interest from the date of each advance until paid at the rates provided therein. The Credit Agreement provides for variable and fixed rates of interest. Under the Credit Agreement, the Grantor may borrow, repay and re-borrow from time to time, up to the maximum credit limit stated above, and all such advances shall be secured by the lien of this Deed of Trust. This Deed of Trust also secures payment of certain fees and charges payable by Grantor under the Credit Agreement, certain fees and costs of Beneficiary as provided in Section 9 of this Deed of Trust, and repayment of money advanced by Beneficiary to protect the Property or Beneficiary's interest in the Property, including advances made pursuant to Section 6 below. The Credit Agreement provides that unless sooner repaid, all amounts due under the Credit Agreement are due and payable in full thirty (30) years from the date of this Deed of Trust (the "Maturity Date"). All amounts due under the Credit Agreement and this Deed of Trust are called the "Debt".

3. **Representations of Grantor**. Grantor represents that:

(a) Grantor is the owner of the Property, which is unencumbered except by: easements, reservations, and restrictions of record not inconsistent with the intended use of the Property and any existing first mortgage or deed of trust given in good faith and for value, the existence of which has been disclosed in writing to Beneficiary; and

(b) The Property is not presently and will not during the term of this Deed of Trust be used for any agricultural purposes.

4. **Promises of Grantor**. Grantor promises:

(a) To keep the Property in good repair and not to remove, alter or demolish any of the improvements on the Property, without first obtaining Beneficiary's written consent;

(b) To allow representatives of Beneficiary to inspect the Property at any reasonable hour, and to comply with all laws, ordinances, regulations, covenants, conditions and restrictions affecting the Property;

(c) To pay on time all lawful taxes and assessments on the Property;

(d) To perform on time all terms, covenants and conditions of any prior mortgage or deed of trust covering the Property or any part of it and pay all amounts due and owing thereunder in a timely manner;

(e) To see to it that this Deed of Trust remains a valid lien on the Property superior to all liens except those described in Section 3(a), and to keep the Property free of all encumbrances which may impair Beneficiary's security;

(f) To keep the improvements on the Property insured by a company satisfactory to

Beneficiary against fire and extended coverage perils, and against such other risks as Beneficiary may reasonably require, in an amount equal to the full insurable value of the improvements, and to deliver evidence of such insurance coverage to Beneficiary. Subject to the rights of the holder of any lien described in 3(a), Beneficiary shall be named as the loss payee on all such policies pursuant to a standard lender's loss payable clause. The amount collected under any insurance policy shall be applied to the repair of such improvements, unless doing so would impair Beneficiary's security, in which event such proceeds may be applied upon any indebtedness hereby secured. In the event of foreclosure or sale of the Property pursuant to the Trustee's power of sale, all rights of the Grantor in insurance policies then in force shall pass to the purchaser at the Sheriff's or Trustee's sale.

(g)  To sign all financing statements and other documents that Beneficiary may request from time to time to perfect, protect and continue Beneficiary's security interest in the Property. Grantor irrevocably appoints Beneficiary as Grantor's attorney-in-fact to execute, file and record any financing statements or similar documents in Grantor's name and to execute all documents necessary to transfer title if there is a default; and

(h)  To advise Beneficiary immediately in writing of any change in Grantor's name, address or employment.

5.  **Sale, Transfer or Further Encumbrance of Property.** Subject to applicable law, the entire Debt shall become immediately due and payable in full upon sale or other transfer of the Property or any interest therein by Grantor by contract of sale or otherwise including, without limit, any further encumbrance of the Property.

6.  **Curing of Defaults.** If Grantor fails to comply with any of the covenants in Section 4, including all the terms of any prior mortgage or deed of trust, Beneficiary may take any action required to comply with any such covenants without waiving any other right or remedy it may have for Grantor's failure to comply. Repayment to Beneficiary of all the money spent by Beneficiary on behalf of Grantor shall be secured by this Deed of Trust; at Beneficiaries option, advance may be made against the Credit Agreement to pay amounts due hereunder; such shall not relieve Beneficiary from liability for failure to fulfill the covenants in Section 4. The amount spent shall bear interest at the rates from time to time applicable under the Credit Agreement and be repayable by Grantor on demand. Although Beneficiary may take action under this paragraph, Beneficiary is not obligated to do so.

7.  **Remedies For Default.**

(a)  Prompt performance under this Deed of Trust is essential. If Grantor does not pay any installment of the Debt or other amount due hereunder on time, or any other event occurs that entitles Beneficiary to declare the unpaid balance of the Debt due and payable in full under the Credit Agreement, or if Grantor fails to comply with any other term, condition, obligation or covenant contained in the Credit Agreement or this Deed of Trust or any rider thereto, or any other deed of trust, mortgage, trust indenture or security agreement or other instrument having priority over this Deed of Trust, or if any representation of Grantor herein was false or misleading, the Debt and any other money whose repayment is secured by this Deed of Trust shall immediately become due and payable in full, at the option of Beneficiary, and the total amount owed by Grantor shall thereafter bear interest at the rate(s) stated in the Credit Agreement. Beneficiary may then or thereafter advise Trustee of the default and of Beneficiary's election to have the Property sold pursuant to Trustee's power of sale in accordance with applicable law and deliver to Trustee any documentation as may be required by law. After giving any notices and the time required by applicable law, Trustee shall sell the Property, either in whole or in separate parcels or other part, and in such order as Trustee may choose, at public auction to the highest bidder for cash in lawful money of the United States which will be payable at the time of sale all in accordance with



applicable law. Anything in the preceding sentence to the contrary notwithstanding, Beneficiary may apply the Debt towards any bid at any such sale. Trustee may postpone any such sale by providing such notice as may be required by law. Unless prohibited by law, any person, including the Grantor, Beneficiary or Trustee, may purchase at any such sale. Trustee shall apply the proceeds of the sale as follows: (i) to the expenses of the sale, including a reasonable trustee's fee and lawyer's fee; (ii) to the obligations secured by this Deed of Trust; and, (iii) the surplus, if any, shall go to the person(s) legally entitled thereto.

(b) Trustee shall deliver to the purchaser at the sale its deed, without warranty, which shall convey to the purchaser the interest in the Property which Grantor had or had the power to convey at the time of execution of this Deed of Trust and any interest which Grantor subsequently acquired. The Trustee's deed shall recite the facts showing that the sale was conducted in compliance with all the requirements of law and of this Deed of Trust. This recital shall be prima facie evidence of such compliance and conclusive evidence of such compliance in favor of bona fide purchasers and encumbrancers for value.

(c) To the extent permitted by law the power of sale conferred by this Deed of Trust is not an exclusive remedy. In connection with any portion of the Property which is personal property, Beneficiary shall further be entitled to exercise the rights of a secured party under the Uniform Commercial Code as then in effect in the state of California.

(d) By accepting payment of any sum secured by this Deed of Trust after its due date, Beneficiary does not waive its right to require prompt payment when due of all other sums so secured or to declare default for failure to so pay.

8. **Condemnation; Eminent Domain.** In the event any portion of the Property is taken or damaged in an eminent domain proceeding, the entire amount of the award, or such portion as may be necessary to fully satisfy the Debt, shall, except as required by applicable law, be paid to the Debt.

9. **Fees and Costs.** Grantor shall pay Beneficiary's and Trustee's reasonable cost of searching records, other reasonable expenses as allowed by law, and reasonable attorney's fees, in any lawsuit or other proceeding to foreclose this Deed of Trust; in any lawsuit or proceeding which Beneficiary or Trustee prosecutes or defends to protect the lien of this Deed of Trust; and, in any other action taken by Beneficiary to collect the Debt, including without limitation any disposition of the Property under the State Uniform Commercial Code; and, any action taken in bankruptcy proceedings as well as any appellate proceedings.

10. **Reconveyance.** Trustee shall reconvey the Property to the person entitled thereto, on written request of Beneficiary, or following satisfaction of the obligations secured hereby and Beneficiary and Trustee shall be entitled to charge Grantor a reconveyance fee together with fees for the recordation of the reconveyance documents unless prohibited by law. If your Credit Line is cancelled or terminated, subject to applicable law, we may delay the cancellation or reconveyance of your security instrument for a reasonable period of time to enable us to post to your Credit Line Account any advances that you have received.

11. **Trustee; Successor Trustee.** Beneficiary may, unless prohibited by law, appoint a successor Trustee from time to time in the manner provided by law. The successor Trustee shall be vested with all powers of the original trustee. The Trustee is not obligated to notify any party hereto of a pending sale under any other deed of trust or of any action or proceeding in which Grantor, Trustee or Beneficiary shall be a party unless such action or proceeding is brought by the Trustee.

12. **Savings Clause.** If a law, which applies to this Deed of Trust or the Credit Agreement and which sets maximum loan charges, is finally interpreted by a court having jurisdiction so that the

interest or other loan charges collected or to be collected in connection with this Deed of Trust or the Credit Agreement exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from Grantor which exceeded permitted limits will be refunded to Grantor. Beneficiary may choose to make this refund by reducing the principal owed or by making a direct payment. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

13. **Miscellaneous.** This Deed of Trust shell benefit and obligate the heirs, devisees, legatees, administrators, executors, successors, and assigns of the parties hereto. The term "Beneficiary" shall mean the holder and owner of the Credit Agreement secured by this Deed of Trust, whether or not that person is named as Beneficiary herein. The words used in this Deed of Trust referring to one person shall be read to refer to more than one person if two or more have signed this Deed of Trust or become responsible for doing the things this Deed of Trust requires. This Deed of Trust shall be governed by and construed in accordance with federal law and, to the extent federal law doesn't apply, the laws of the state of California. If any provision of this Deed of Trust is determined to be invalid under law, the remaining provisions of this Deed of Trust shall nonetheless remain in full force and effect.

14. **Beneficiary and Similar Statements.** Beneficiary may collect a fee in the maximum amount allowed by law for furnishing any beneficiary statement, payoff demand statement or similar statement.

By signing below Grantor accepts and agrees to the provisions of this Deed of Trust and of any rider(s) executed by Grantor concurrently therewith.

DATED at Lake Elsinore California this 1 day of ~~October~~ November 1st, 2001

GRANTOR(S):

CHAD A BOLTON

The undersigned executes this instrument only to subordinate any interest he/she may acquire including without reservation any homestead/dower rights and to acknowledge all the terms and covenants contained in this Security Instrument and any rider(s) thereto and agrees to be bound hereby.

ANDREA BOLTON

STATE OF CALIFORNIA )
) SS
COUNTY OF Riverside )

On November 1, 2001 before me, Rachel M Anderson a Notary Public in and for the State of California, personally appeared Chad A Bolton and Andrea Bolton

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Rachel M Anderson

Notary Public in and for the State of California
My Commission expires: May 11, 2007

RACHEL M. ANDERSON
Commission # 1417306
Notary Public - California
Riverside County
My Comm. Expires May 11, 2007

**REQUEST FOR FULL RECONVEYANCE**
**(Do not record. To be used only when note has been paid.)**

TO: TRUSTEE

The undersigned is the legal owner and holder of the Note and all other indebtedness secured by the within Deed of Trust. Said Note, together with all other indebtedness secured by this Deed of Trust, has been fully paid and satisfied and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of this Deed of Trust to cancel the Note above mentioned and all other evidences of indebtedness secured by this Deed of Trust together with the Deed of Trust and to convey, without warranty, to the parties designated by the terms of this Deed of Trust all the estate now held by you thereunder.

DATED ______________________ ______________________________

______________________________

Mail reconveyance to ______________________________



# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 1ST day of November 2004, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to Washington Mutual Bank, FA (the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 22801 LASSEN DR canyon lake, CA 92587-7939
(Property Address)

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in the recorded CC&R's (the "Declaration"). The Property is a part of a planned unit development known as: canyon lake
(Name of Planned Unit Development)

(the "PUD"). The Property also includes Borrower's interest in the Homeowners' Association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners' Association") and the uses, benefits, and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. **PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners' Association; and (iii) any by-laws or other rules or regulations of the Owners' Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. **Property Insurance.** So long as the Owners' Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which



Lender requires insurance, then:

(i)     Borrower's obligation under the Security Instrument to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners' Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C.  **Public Liability Insurance.**  Borrower shall take such actions as may be reasonable to insure that the Owners' Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D.  **Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided therein with the excess, if any, paid to Borrower.

E.  **Lender's Prior Consent.**  Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i)     the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii)    any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii)   termination of professional management and assumption of self-management of the Owners' Association; or

(iv)    any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners' Association unacceptable to Lender.

F.  **Remedies.**  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment unless otherwise prohibited by applicable law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

CHAD A BOLTON

The undersigned executes this instrument only to subordinate any interest he/she may acquire including without reservation any homestead/dower rights and to acknowledge all the terms and covenants contained in this Security Instrument and any rider(s) thereto and agrees to be bound hereby.

ANDREA BOLTON

STATE OF California )
) PROBATE
COUNTY OF Riverside )

PERSONALLY appeared before me the undersigned witness and made oath that he/she saw the named Borrower(s), sign, and Seal, and by his/her act and deed deliver the within written Rider, and that he/she with the other witness whose signature appears above, witnessed the execution thereof.

SWORN to before me this:

Date: November 1, 2001

Printed/Typed Name: Rachel M Anderson
Notary public in and for the state of California
Commission Number: 1417306

Recording requested by and, when recorded return to:
Washington Mutual Bank, FA
1111 E. Katella Ave.
Ste 110
Orange, CA 92867
Attn: Ticor Title NLS

RACHEL M. ANDERSON
Commission # 1417306
Notary Public - California
Riverside County
My Comm. Expires May 11, 2007

# EXHIBIT 5 – GRANT DEED

ORANGE COAST TITLE CO.

RECORDING REQUESTED BY:
Orange Coast Title Company Murrieta Branch

AND WHEN RECORDED, MAIL TO:

CHAD A. BOLTON
29479 STAMPEDE WAY
CANYON LAKE, CA 92587

DOC # 2003-521467
07/14/2003 08:00A Fee:30.00
Page 1 of 2 Doc T Tax Paid
Recorded in Official Records
County of Riverside
Gary L. Orso
Assessor, County Clerk & Recorder

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|---|---|---|---|---|---|---|
| | 1 | | 2 | | | | 1 | | |
| A | R | L | | | COPY | LONG | REFUND | NCHG | EXAM |

THIS

# GRANT DEED

TRA: 023-003 353-191-005-5

ASSESSOR'S PARCEL NO.:
TITLE ORDER NO.:
ESCROW NO.: 102260-KM

The undersigned Grantor(s) declare that the **DOCUMENT TRANSFER TAX IS:** ~~$588.50~~ 594.00
County City
___ computed on the full value of the interest of property conveyed, or
___ computed on the full value less the value of liens or encumbrances remaining thereon at the time of sale.
___ OR transfer is EXEMPT from tax for the following reason:

30

T SP

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

R 336504-1

ANGELO NICHOLAS ROCCO and BEVERLY ROCCO, Husband and Wife as Joint Tenants

hereby GRANT(S) to

CHAD A. BOLTON, a Married Man as his Sole and Separate property

all that real property situated in the City of CANYON LAKE, County of **RIVERSIDE**, State of **CA**, described as:

LOT 87 OF TRACT NO. 3720 IN THE CITY OF CANYON LAKE, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 58, PAGES 76 TO 86 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Dated May 30, 2003

State of California }
County of Orange }
On May 31, 2003, Before me Mary Bray-Notary Public
Personally appeared
Angelo Nicholas Rocco and Beverly Rocco
~~Personally known to me~~ (or provided to me on the basis of satisfactory evidence) to be the person(s) whose name(s) ~~is~~/are subscribed to the within instrument and acknowledged to me that ~~he/she~~/they executed the same in ~~his/her~~/their authorized capacity(ies), and that by ~~his/her~~/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

Signature [signature]

[signature]
ANGELO NICHOLAS ROCCO

[signature]
BEVERLY ROCCO

MARY BRAY
COMM. # 1306040
Notary Public-California
Orange County
My Commission Expires
JUNE 24, 2005

MAIL TAX STATEMENTS TO:

(This area for official notary seal)



GARY L. ORSO
COUNTY OF RIVERSIDE
ASSESSOR-COUNTY CLERK-RECORDER

Recorder
P.O. Box 751
Riverside, CA 92502-0751
(909) 486-7000

http://riverside.asrclkrec.com

# NOTARY CLARITY

Under the provisions of Government Code 27361.7, I certify under the penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of Notary: Mary Bray

Commission #: 1306040

Place of Execution: Orange, CA

Date Commission Expires: 6-24-05

Date: 7-11-03

Signature: Robert Thomp—

ACR 186P-AS4RE0 (Est 05/2003)

2003-521467
07/14/2003 08:00A
2 of 2